No. 24-12925

# In the United States Court of Appeals
# for the Eleventh Circuit

KEITH EDWARDS, AS GUARDIAN AND CONSERVATOR FOR JERRY
BLASINGAME,

*Plaintiff-Appellant,*

v.

OFFICER J. GRUBBS, #6416, ET AL.,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-cv-02047 (Jones, J.)

## Brief of Appellees City of Atlanta and Officer J. Grubbs

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
Alexander J. Hill
TROUTMAN PEPPER LOCKE, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com
alex.hill@troutman.com

*Counsel for Appellees City of Atlanta and Officer J. Grubbs*

# CERTIFICATE OF INTERESTED PERSONS

## No. 24-12925, *Keith Edwards v. Officer J. Grubbs, et al.*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1. Atlanta Police Department

2. Blasingame, Jerry

3. City of Atlanta

4. Dearing Jr., James E.

5. Eason, Kimberly D.

6. Edwards, Keith

7. Grubbs, Officer J.

8. Hatchett, Ayanna D.

9. Hill, Alexander J.

10. Johnson, Vernon R.

11. Jones, Hon. Steve C.

12. Melton, Harold D.

13. Miller, J. Stacy

14. Peeler, Charles E.

15. Pierre, Hermise

16.     Tobin, Darren M.

17.     Waldbeser, Elizabeth P.

February 10, 2025                    s/ *Harold D. Melton*
                                     Harold D. Melton

                                     *Counsel for Appellees City of*
                                     *Atlanta and Officer J. Grubbs*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument in this case. There are only two legal issues properly before the Court in this particular appeal, and both are straightforward. The facts and legal arguments are adequately presented in the briefs, and oral argument would not significantly aid the decision-making process.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ......................................................... iii

Table of Contents ..................................................................................... iv

Table of Authorities ................................................................................. vi

Introduction ............................................................................................... 1

Jurisdictional Statement ............................................................................ 2

Statement of Issues ................................................................................... 3

Statement of the Case ............................................................................... 4

I.     Factual Background. ........................................................................ 4

A.    The underlying incident. ................................................................ 4

B.    Officer Grubbs' body camera usage during the incident. ............... 7

C.    The City's policies and training on body cameras. ........................ 8

II.    Relevant Proceedings Below. ...................................................... 10

A.    Trial and Jury Verdict. ................................................................. 11

B.    Post-trial motions and proceedings. ............................................ 11

III.   Standard of Review ...................................................................... 19

A.    Motion for judgment as a matter of law. ..................................... 19

B.    Rule 60(b) motion. ....................................................................... 20

C.    Attorneys' fees motion. ................................................................ 20

D.    Remittitur. ................................................................................... 20

Summary of Argument ............................................................................ 21

Argument. ................................................................................................ 24

I.     The City was entitled to qualified immunity. ............................... 24

II.    The district court properly and timely remitted the punitive damages award against Officer Grubbs. ....................................................... 31

III.    Appellant failed to plead a claim for damages pursuant to O.C.G.A. § 42-5-2................................................................................................ 34

IV.    Appellant's attorneys' fees arguments are not properly before this Court. . 37

Conclusion ........................................................................................................ 39

Certificate of Compliance ................................................................................. 40

Certificate of Service ........................................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AcryliCon USA, LLC v. Silikal GmbH & Co.,*
    46 F.4th 1317 (11th Cir. 2022) ................................................... 20, 21

*Arthur v. Thomas,*
    739 F.3d 611 (11th Cir. 2014) ........................................................... 20

*Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co.,*
    953 F.3d 707 (11th Cir. 2020) ........................................................... 31

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,*
    520 U.S. 397 (1997) ............................................................... 27, 30

*Bradley v. Benton,*
    10 F.4th 1232 (11th Cir. 2021) ........................................................ 14

*City of Atlanta v. Mitcham,*
    296 Ga. 576 (2015) ......................................................................... 36

*Connick v. Thompson,*
    563 U.S. 51 (2011) ................................................................... 21, 25

*Cooper v. Dillon,*
    403 F.3d 1208 (11th Cir. 2005) ....................................................... 25

*Crawford v. Andrew Sys.,*
    119 F.3d 925 (11th Cir. 1997) ......................................................... 31

*Edwards v. Grubbs,*
    No. 22-13261 (11th Cir. Dec. 1, 2022) ............................................ 14

*Edwards v. Grubbs,*
    No. 22-13261, 2024 U.S. App. LEXIS 3526 (11th Cir. Feb.
    15, 2024) ............................................................... 31, 33, 34

*Edwards v. Grubbs,*
    No. 24-12787 (11th Cir.) ........................................................... 18, 24

*Edwards v. Grubbs,*
    No. 24-12925 (11th Cir. Nov. 1, 2024) ................................................. 19

*Ga. Dep't of Labor v. RTT Assocs., Inc.,*
    299 Ga. 78 (2016) ................................................................................. 36

*Gilmour v. Gates, McDonald & Co.,*
    382 F.3d 1312 (11th Cir. 2004) ..................................................... 35, 36

*Godfrey v. Ga. Interlocal Risk Mgmt. Agency,*
    290 Ga. 211 (2011) ............................................................................... 36

*Gold v. City of Miami,*
    151 F.3d 1346 (11th Cir. 1998) ........................................................... 27

*Hurlbert v. St. Mary's Health Care Sys., Inc.,*
    439 F.3d 1286 (11th Cir. 2006) ........................................................... 35

*Jackson v. Austin,*
    267 F. Supp. 2d 1059 (D. Kan. 2003) ................................................. 38

*Johnston v. Borders,*
    2019 U.S. Dist. LEXIS 228218 ........................................................... 33

*Kirkeby v. Furness,*
    905 F. Supp. 727 (D.N.D. 1995) ......................................................... 39

*Knight v. Miami-Dade Cnty.,*
    856 F.3d 795 (11th Cir. 2017) ............................................................. 30

*Lamonica v. Safe Hurricane Shutters, Inc.,*
    No. 07-61295-CIV, 2011 WL 13173036 (S.D. Fla. Dec. 2,
    2011) ....................................................................................................... 38

*McDowell v. Brown,*
    392 F.3d 1283 (11th Cir. 2004) ............................................. 25, 27, 29

*McGuire v. Strange,*
    No. 2:11-CV-1027-WKW, 2015 WL 13945331 (M.D. Al.
    Aug. 27, 2015) ...................................................................................... 38

*MidlevelU, Inc. v. ACI Info. Grp.,*
    989 F.3d 1205 (11th Cir.), *cert. denied*, 141 S. Ct. 2863
    (2021) .................................................................................... 19

*Monell v. Dep't of Soc. Servs. of N.Y.,*
    436 U.S. 658 (1974) ..................................... 1, 11, 12, 13, 21, 24, 29, 30

*Montgomery v. Noga,*
    168 F.3d 1282 (11th Cir. 1999) ............................................. 19

*Olivas v. A Little Havana Check Cash, Inc.,*
    324 F. App'x 839 (11th Cir. 2009) ................................. 20, 21

*Rafferty v. Denny's, Inc.,*
    13 F.4th 1166 (11th Cir. 2021) ............................................. 35

*Scantland v. Jeffry Knight, Inc.,*
    721 F.3d 1308 (11th Cir. 2013) ............................................. 38

*Smith v. Psychiatric Sols., Inc.,*
    750 F.3d 1253 (11th Cir. 2014) ............................................. 37

*Tancredi v. Metro. Life Ins. Co.,*
    378 F.3d 220 (2d Cir. 2004) ................................................. 38

*Thosteson v. United States,*
    331 F.3d 1294 (11th Cir. 2003) ............................................. 19

*Underwood v. City of Bessemer,*
    11 F.4th 1317 (11th Cir. 2021) ............................................. 24

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
    792 F.3d 1313 (11th Cir. 2015) ............................................. 25

*Yellow Pages Photos, Inc. v. Ziplocal, LP,*
    846 F.3d 1159 (11th Cir. 2017) ............................................. 20

## Statutes

28 U.S.C. § 1291 ...................................................................... 2

28 U.S.C. § 1331 ...................................................................... 2

42 U.S.C. § 1983 ....................................................2, 10 ,11, 24, 25, 32, 35

42 U.S.C. § 1988 .............................................................................. 15, 39

O.C.G.A. § 42-5-2 ............................................2, 3, 14, 15, 22, 34, 35, 36

**Other Authorities**

Wright and Miller, 11 Fed. Prac. & Proc. Civ. § 2812 (3d ed.) ............... 33

U.S. Const. amend. IV ............................................... 10, 12, 13, 21, 24, 31

Federal Rule of Appellate Procedure 4(a)(1)(A) ....................................... 3

Fed. R. Civ. P. 8 ................................................................................. 35

Rule 41 ........................................................................................ 17, 31

Fed. R. Civ. P. 59 .................................................... 17, 31, 32, 34

Fed. R. Civ. P. 60 ...................................................... 2, 17, 18, 20, 36

## INTRODUCTION

In this case, Officer Grubbs, a City of Atlanta police officer carrying out his routine duties, attempted to arrest Mr. Blasingame, who was panhandling by the side of the interstate. As Mr. Blasingame fled from Officer Grubbs, Officer Grubbs deployed his taser one time to stop Mr. Blasingame's flight. In a tragic and unforeseeable turn of events, Mr. Blasingame, who was running up a hill to escape from Officer Grubbs, rolled down the hill and into a metal utility box hidden from view at the base of the hill. Mr. Blasingame was left paralyzed.

After a full jury trial resulting in a verdict on Mr. Blasingame's behalf against Officer Grubbs and the City of Atlanta, the district court found that, as a matter of law, the City was not liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1974), but affirmed the verdict against Officer Grubbs. After a flurry of post-trial motions, Appellant—Mr. Blasingame's court-appointed guardian, Keith Edwards—filed this appeal. Appellant raises four arguments, but only two are properly before this Court: that the City did not properly train its officers on body camera usage and that alleged failure to train caused Mr. Blasingame's physical injuries; and that the district court improperly

1

found Officer Grubbs' motion for remittitur as timely. Both of Appellant's arguments are unsupported by both the law and the factual record, and this Court should affirm the district court.

## JURISDICTIONAL STATEMENT

Mr. Blasingame filed the underlying second amended complaint, *see* Doc. 261, pursuant to 42 U.S.C. § 1983. The United States District Court for the Northern District of Georgia accordingly had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction over Appellant's challenge to the district court's order granting judgment as a matter of law on May 2, 2024 pursuant to 28 U.S.C. § 1291, because that order formally resolved all claims and entered judgment in favor of Mr. Blasingame and against Officer Grubbs in the amount of $21,000,000. Docs. 260, 269, 270. The Court also has jurisdiction over Appellant's challenge to the district court's denial of its post-trial Rule 60(b) motion for relief under O.C.G.A. § 42-5-2 (Doc. 191) and motion for attorneys' fees (Doc. 186) because the district court's May 2, 2024 order denying those motions resolved all pending post-trial motions and was thus a final judgment pursuant to 28 U.S.C. § 1291. *See* Doc. 260.

Appellant timely filed his notice of appeal on September 9, 2024, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A). Doc. 276.

## STATEMENT OF ISSUES

1. Whether the district court properly held that Mr. Blasingame's injuries were not caused by the City's body camera usage policies;

2. Whether the district court properly remitted punitive damages awarded against Officer Grubbs when he moved for remittitur six days after final judgment;

3. Whether the district court properly denied Appellant's motion for relief from judgment under O.C.G.A. § 42-5-2 when Appellant did not plead any claim for medical expenses and did not make the required threshold showing of a waiver of sovereign immunity; and

4. Whether the amount of attorneys' fees Appellant sought below is properly before this Court.

## STATEMENT OF THE CASE

### I.    Factual Background.

### A.    The underlying incident.

On the afternoon of July 10, 2018, Officer Grubbs and his partner, Officer Shelley, were driving in their patrol car near an on-ramp to Interstate 20 in Atlanta. Trial Transcript ("Tr.") 854:10–25. The officers noticed Mr. Blasingame, who appeared to be panhandling, standing on the shoulder of the highway on-ramp. Tr. 1086:20–25. When Officer Grubbs decided to question Mr. Blasingame, Officer Shelley stopped the patrol car across the street from Mr. Blasingame. Tr. 885:16–19, 1087:4–9.

Officer Grubbs got out of the car and crossed the busy roadway, approaching Mr. Blasingame to ascertain why he was standing on the highway ramp. Tr. 1087:4–9, 1048:21–25. When he saw Officer Grubbs, Mr. Blasingame turned and ran away on the shoulder of the highway ramp; Officer Grubbs followed him on foot. Tr. 1087:10–18. Officer Grubbs called after Mr. Blasingame to stop, but Mr. Blasingame continued to run away. Tr. 1051:11–18.

As Officer Grubbs got closer to Mr. Blasingame, Mr. Blasingame crossed over a roadside guardrail, so he was then on the side farthest

4

away from where Officer Grubbs first saw him. Tr. 1054:3–11, 1051:23–1052:8. The area where Mr. Blasingame crossed over was extremely overgrown with shrubs and other vegetation and opened up to a downhill decline. Tr. 1056:3–6, 1075:10–13. At the bottom of the decline, out of Officer Grubbs' sight line, was a grassy area with a metal utility box that sat on a concrete pad. Tr. 538:23–539:5. On the other side of the grassy area and the utility box was another road near the interstate. Officer Grubbs could not see the utility box, but he was aware that the decline led downwards towards another road. Tr. 1089:4–12, 1090:16–1091:1.

While Mr. Blasingame was crossing over the guardrail, Officer Grubbs caught up with him and attempted to stop Mr. Blasingame. Tr. 1054:18–22. In response, Mr. Blasingame moved his arm backwards at Officer Grubbs in what Officer Grubbs later described as a "clearance strike." Tr. 1056:1–23. Mr. Blasingame did not make contact with Officer Grubbs or cause him to feel in physical danger, nor did he verbally respond to Officer Grubbs' instruction to stop. Tr. 1058:5–8, 1059:2–6.

Mr. Blasingame ran towards an opening in the brush. Tr. 1064:10–15. Officer Grubbs, concerned that Mr. Blasingame would flee into traffic on the road beyond the grassy area and potentially endanger himself and

drivers, drew and discharged his taser at Mr. Blasingame. Tr. 1068:10–1069:1. Officer Grubbs did not verbally warn Mr. Blasingame about the taser. Tr. 1066:6–10. The taser struck Mr. Blasingame, causing him to fall down the decline where he hit his head on the concrete base of the utility box in the grassy area. Tr. 538:23–539:5 (citing Ex. 39), 1075:14–1076:15. The fall caused Mr. Blasingame several fractured bones and significant bleeding. Tr. 1274:7–1275:4. This entire incident took place in 45 seconds or less. Tr. 1090:3–6.

After Mr. Blasingame fell, Officer Grubbs approached as Mr. Blasingame lay on the ground, breathing but unresponsive. Tr. 1076:25–1077:7, 1091:19–23. Over the next several minutes, Officer Grubbs used his radio to summon first responders to provide medical assistance, walked back to the roadway to inform Officer Shelley of what had occurred, went back to attend to Mr. Blasingame, and called a supervising officer by phone to report the incident. Tr. 1078:16–1081:12, 1091:17–1093:8. Shortly after, Mr. Blasingame was transported to a hospital where he was treated for his injuries. Tr. 1079:13–23.

### B. Officer Grubbs' body camera usage during the incident.

The body cameras used by APD at the time had three settings: off; on and buffering; and on and event. When a body camera is turned on, it goes into buffering mode. Tr. 174:8–10. A body camera is "buffering" when it records what is happening as it occurs, but every two minutes, the previous two minutes are erased and the next two minutes are captured. Tr. 464:19–465:5. When an officer presses the "event button," the body camera preserves the previous two minutes of buffering without audio, and then records the events going forward with audio. *Id*.; Tr. 256:14–19. If an officer turns off a body camera while it is buffering, the most recent buffer cycle is permanently erased. Tr. 179:10–15.

Officer Grubbs' camera was turned off for five minutes before he left for patrol with Officer Shelley. Tr. 243:20–244:09, 1093:11–1094:02. The camera records show it alternated between buffering and event from when Officer Grubbs left on patrol, around 12:45 pm, until 2:36 pm, when it was turned off, then turned back on at 2:37 pm, and Officer Grubbs rapidly pressed the event button five times. Tr. 250:25–251:8, 252:3–20, 255:11–256:4, 465:15–21; Doc. 211-3 at 7.

Officer Grubbs testified that when he made his way to Mr. Blasingame at the bottom of the incline, he discovered his body camera was turned off and was not on and buffering. He turned it on at that time. Tr. 930:10–931:3. Officer Grubbs then pressed the event button multiple times to try and get his camera up as quickly as possible. Tr. 1093:11–1094:2. Because of this, there was no video of the incident. Tr. 262:12–18.

### C.   The City's policies and training on body cameras.

The City's police officers began wearing body cameras in phases starting in late 2016. Tr. 148:14–24. Soon after its officers began wearing body cameras, APD developed written policies for body cameras. Tr. 148:19–149:5. APD's standard operating procedures include guidelines for the proper use of body cameras, including when to record, how to use the camera, and the responsibility of sworn personnel for the camera's video files. Tr. 149:13–22; *see also* Doc. 211-7 (Pls. Ex. 26, APD Policy Manual SOP on body cameras).

Instructors from the body camera manufacturer trained APD officers on proper use in 2016. Tr. 151:3–20. Officers, including Officer

Grubbs, received an initial 4 hours of training when they received their cameras. Tr. 157:8–15, 912:23–913:17.

Per APD's policies, officers are required to keep every video they record while wearing the body camera, and each recording must be tagged with a case number, must include metadata, and must be preserved according to a retention category based on the type of recording. Tr. 154:14–155:5. APD officers are trained not to turn off their cameras while the cameras are buffering because that could destroy evidence. Tr. 179:16–180:4.

An audit of body camera usage by APD officers in December 2018 showed that from November 2017–May 2018 nearly two-thirds of APD officers were not using their body cameras correctly. Tr.268:5–270:5. However, a witness testified that the number was likely inaccurate because the survey included calls where officers did not interact directly with the public, or situation responses where they would not be required to engage their body cameras, hence the lack of video. Tr. 271:15–272:1, 293:12–296:18. Further, other officers had noted issues with accidentally turning their cameras off when they meant to turn them on, or cameras inadvertently toggling out of event mode. Tr. 964:21–965:8, 966:13–21.

Appellant also presented expert evidence from two witnesses that, in their opinions, there "may be a culture" of overlooking or ignoring violations of body camera policy, Tr. 584:16–586:20, and that body cameras generally reduce excessive force incidents. Tr. 1118:19–1119:18.

Officer Grubbs was placed on administrative leave after the underlying incident, which was investigated by both APD and the Georgia Bureau of Investigation. Doc. 211-3 (APD investigation report); Doc. 211-6 at 48 (Georgia Bureau of Investigation incident investigation report). Officer Grubbs was later disciplined for his improper body camera usage in the underlying incident, Tr. 978:3–979:3, but APD reached no conclusion about whether Officer Grubbs violated its use of force policy. Doc. 211-3 at 57.

## II.  Relevant Proceedings Below.

One year later, Mr. Blasingame sued Officer Grubbs and the City of Atlanta, bringing a claim under 42 U.S.C. § 1983 for an alleged violation of his Fourth Amendment rights against Officer Grubbs and the City of Atlanta. Doc. 1 at 5. After some initial discovery, Appellant[1] filed

---

[1] Mr. Blasingame was originally the named plaintiff in this action. After he filed the Amended Complaint, a state court in a related action found that he lacked sufficient capacity to make or communicate significant decisions about his own health and safety. *See generally* Doc. 113. Consequently, Keith Edwards was appointed as Mr.

an Amended Complaint on Mr. Blasingame's behalf, bringing the same Section 1983 claims against Officer Grubbs and the City. Doc. 52. ¶¶ 29–38.

### A.    Trial and Jury Verdict.

The jury found for Appellant and returned a $40 million verdict—$20 million in compensatory damages and $20 million in punitive damages—against Officer Grubbs. Doc. 163 at 1–2. The jury also returned a verdict of $60 million in compensatory damages against the City. *Id.* at 2.

### B.    Post-trial motions and proceedings.

After the trial, Officer Grubbs and the City renewed their oral motions for judgment as a matter of law ("JMOL"). Docs. 155, 176. The district court denied Officer Grubbs' motion and granted the City's motion for JMOL. Doc. 177. As relevant here, the district court held that a reasonable jury could not have found that the City was liable under *Monell*. The district court held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame, but

---

Blasingame's guardian and conservator, and the parties stipulated to Mr. Edwards' replacement of Mr. Blasingame as the named plaintiff. *Id.* For clarity, this brief will refer to Mr. Blasingame by name and Mr. Edwards as "Appellant."

that Appellant did not show that the City had a custom or policy of deliberate indifference towards Fourth Amendment rights to support his *Monell* claim. The district court explained that the Atlanta Police Department ("APD") requires officers to undergo "extensive training concerning use of force, which includes training regarding the proper use of tasers." *Id.* at 18–19 (explaining that the taser policy did not constitute a constitutional injury). Additionally, the district court explained that APD maintains an official policy on proper taser usage that provides guidance about "where, when, and against whom an officer generally should not discharge tasers." *Id.* at 18–19.

Next, the district court explained that, given the City's "adequate and reasonable official policies," Appellant had to show a "de facto or unofficial policy or custom that permitted officers to use excessive force, and specifically, tasers," in a way that caused Officer Grubbs to use excessive force against Mr. Blasingame. *Id.* at 19. However, the district court held that Appellant did not provide "sufficient evidence to support a finding that any policies and procedures relating to BWCs *caused* the constitutional violation at issue." *Id.* Further, there was no evidence that the City was on notice of improper taser use or acted with deliberate

12

indifference toward improper taser use. *Id*. Finally, the audit of Officer Grubbs' actions in the incident at issue "did not show how or why he discharged his taser, or whether his prior uses of [the] taser constituted excessive force." *Id*.

The district court then addressed Appellant's other arguments in support of his *Monell* claim. It first explained that any delay in disciplinary proceedings against Officer Grubbs did not show a pattern sufficient to support a *Monell* claim. *Id*. at 20. Next, the district court explained that, while Appellant presented conflicting evidence about whether the City properly trained officers on body camera usage and that discipline for body camera policy noncompliance was inconsistent, Appellant had not shown that any body camera policies or practices "*caused*" the alleged constitutional violation or injuries at issue. *Id*. at 20–21 (emphasis in original).

The district court next turned to Officer Grubbs' motion. It held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame and thereby violated his Fourth Amendment rights. *Id*. at 30–32. The district court also held that Officer Grubbs' use of the taser was clearly established as a constitutional

violation at the time it occurred, relying exclusively on this Court's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021). *Id.* at 32–34. Officer Grubbs timely appealed from the district court's order. Doc. 178.

After Officer Grubbs filed his notice of appeal, this Court issued a jurisdictional question, and the parties submitted briefing in response. After that briefing was submitted, Appellant filed two Rule 60(b) motions seeking relief from the district court's order absolving the City from liability. Docs.187, 191. Consequently, this Court rescinded the briefing schedule on appeal until the district court resolved those pending motions. Memo. to Counsel or Parties, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Dec. 1, 2022).

As relevant here, Appellant moved for relief from the district court's judgment absolving the City of liability based on O.C.G.A. § 42-5-2. Doc. 191. Appellant argued that the City was liable for Mr. Blasingame's medical expenses from the time of his injury to the present because he was an "inmate" at the time of his injury and O.C.G.A. § 42-5-2 imposed a duty to pay for the medical expenses of inmates in its custody on the City. *Id.* at 9–12. Appellant also moved for attorneys' fees to be awarded

14

to him and against Officer Grubbs as the prevailing party under 42 U.S.C. § 1988. Doc. 186.

The district court denied both post-trial motions. Doc. 219. As relevant here, it denied Appellant's motion for relief from judgment rejecting his O.C.G.A. § 42-5-2 claim for medical expenses for two reasons: First, the district court held that Appellant waived any claim for damages under § 42-5-2 because he did not plead a claim under that statute. *Id.* at 12–14. The district court further explained that Appellant also did not add a claim under § 42-5-2 to his amended complaint, or even raise the issue until summary judgment, and as such, it would be "improper to find the City liable for a claim it did not know it was defending until [Appellant] filed his summary judgment motion." *Id.* at 14.

Second, the district court denied Appellant's motion because he did not carry his burden of showing that the City had waived sovereign immunity for the claim. *Id.* at 14–15. Under Georgia law, § 42-5-2 does not automatically waive sovereign immunity for municipalities, and Appellant agreed with that statement of law in his motion. *Id.*; *see also* Doc. 191 at 9 ("The [Supreme Court of Georgia] has confirmed 'that the

15

care of inmates in the custody of a municipal corporation is a governmental function for which sovereign immunity has not been waived.'") (quoting *City of Atlanta v. Mitcham*, 296 Ga. 576, 576 (2015)).

The district court also addressed Appellant's motion for attorneys' fees. Doc. 219 at 5–6. It denied Appellant's motion as premature, stating that while "there is no doubt that [Appellant] was the prevailing party at trial," the judgment against Officer Grubbs and in Appellant's favor was on appeal and the outcome of the appeal could "impact exactly how successful [Appellant] has been in this case." *Id*. at 6. Accordingly, the district court "defer[ed] a final ruling on the attorneys' fees until the appeal has been completed" and denied Appellant's motion "with the understanding that it might be reraised." *Id*.

The district court temporarily stayed the execution of the judgment pending appeal. Docs. 220, 221. The parties then submitted motions regarding a stay of final judgment, Docs. 233, 235, and the district court granted in part and denied in part the motions to stay proceedings to execute the judgment pending appeal or to collect any amounts from Officer Grubbs. *See* Doc. 240.

On February 15, 2024, this Court denied both parties' appeals on jurisdictional grounds because the JMOL Order was not a final judgment and remanded the case back to the district court. Doc. 251 (explaining that because the parties stipulated to dismiss Count II under Rule 41, which requires "the dismissal of an entire action" instead of a single claim, "a final judgment was never rendered" (citations omitted)).

Upon remand to the district court, Appellant amended his complaint to properly drop the unresolved count and to update Mr. Edwards' status as administrator of Mr. Blasingame's estate and simultaneously moved for the entry of final judgment. Doc. 256.[2] The district court then entered final judgment as to all counts on May 2, 2024. Doc. 260. Officer Grubbs consequently filed a motion for reconsideration regarding the district court's order on his motion for directed verdict and order on motion for judgment as a matter of law. Doc. 262; *see also* Docs. 177, 264 (response), 267 (reply). Concurrently, Officer Grubbs filed a motion for new trial and motion for remittitur of punitive damages pursuant to Federal Rules of Civil Procedure 59(a), (e) and 60(b)(6),

---

[2] The district court granted the amendment of the complaint, Doc. 260, and Plaintiff's complaint was thereafter styled the Second Amended Complaint, *see* Docs. 261, 271.

Doc. 263; *see also* Docs. 265 (response), 266 (reply). The district court thereafter denied the motion for reconsideration, Doc. 269, and granted and denied in part the motion for new trial or remittitur of punitive damages, Doc. 270. Specifically, the district court denied Officer Grubb's motion for a new trial or remittitur of punitive damages based on the occurrences and arguments made at trial, but found that the $20 million punitive damages award in the case was unconstitutionally excessive under the due process clause. *See* Doc. 270.

On August 28, 2024, Officer Grubbs timely appealed the district court's orders on his JMOL motion (Doc. 177), motion for reconsideration (Doc. 269) and motion for a new trial (Doc. 270). *See Edwards v. Grubbs*, No. 24-12787 (11th Cir.); Doc. 273. On September 9, 2024, Appellant also filed a notice of appeal as to the orders on his motion for directed verdict and JMOL (Doc. 177), motion for attorney fees and Mr. Blasingame's medical expenses (Doc. 219),[3] motion for relief pursuant to Rule 60(b) and motion for relief from order/judgment (Doc. 269), motion for new trial (Doc. 270) and the amended clerk's judgment (Doc. 272). *See* Doc. 276.

---

[3] Plaintiff filed an earlier appeal of the district court's order on attorney fees. Doc. 226.

This Court issued a briefing notice stating that each appeal shall proceed separately. *See* Corrected Briefing Notice, *Edwards v. Grubbs*, No. 24-12925 (11th Cir. Nov. 1, 2024). Appellant then filed this appeal.

## III. Standard of Review.

### A. Motion for judgment as a matter of law.

This Court reviews "*de novo* a grant or denial of a judgment as a matter of law." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir.), *cert. denied*, 141 S. Ct. 2863 (2021) (citing *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003)). "In considering the sufficiency of the evidence that supports the jury's verdict," the Court reviews "the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (quotation omitted). However, the nonmoving party "must put forth more than a mere scintilla of evidence suggesting that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Thosteson*, 331 F.3d at 1298 (quotation omitted). Any legal determinations raised by the motion are reviewed *de novo*. *Montgomery*, 168 F.3d at 1289.

**B.    Rule 60(b) motion.**

This Court reviews "a district court's denial of a Rule 60(b) motion for an abuse of discretion." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (quotation omitted). A "district court by definition abuses its discretion when it makes an error of law." *AcryliCon USA, LLC v. Silikal GmbH & Co.*, 46 F.4th 1317, 1324 (11th Cir. 2022) (quotation omitted).

**C.    Attorneys' fees motion.**

This Court reviews "fees and costs awards under an abuse-of-discretion standard." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017) (citation omitted). A district court abuses its discretion when it "commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact." *Id.* (citation omitted).

**D.    Remittitur.**

This Court reviews the grant of remittitur under an abuse of discretion standard. *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 843–44 (11th Cir. 2009) ("We review a district court's remittitur award for abuse of discretion.") (citing *Fratelli Gardino S.p.A. v. Caribbean Lumber Co.*, 587 F.2d 204, 206 (5th Cir. 1979)). A "district court by definition abuses its discretion when it makes an error of law."

20

*AcryliCon*, 46 F.4th at 1324. "Where a district court has already 'invoked its discretion in granting a remittitur, [this Court's] scope of review is even narrower than usual.'" *Olivas*, 324 F. App'x at 843–44 (quoting *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571, 574 n.7 (5th Cir. 1979)).

## SUMMARY OF ARGUMENT

First, the district court correctly held that, as a matter of law, the City was not liable for Officer Grubbs' actions under *Monell* because Appellant failed to show that the City neglected to train its officers on use of body cameras or that its body camera policies caused any injury to Mr. Blasingame or alleged violation of his Fourth Amendment rights. To prevail on his *Monell* claim, Appellant needed to show either "a pattern of similar constitutional violations by untrained employees," or that "the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Connick v. Thompson*, 563 U.S. 51, 58, 63 (2011).

But Appellant did not satisfy these elements through his evidence at trial. Imperfections in the City's body camera training do not equate to "deliberate indifference" regarding officers' body camera usage.

Further, Appellant did not show an "obvious" need for the City to provide more or different training. There was no clear omission in the City's body camera training that was obvious in the abstract. Finally, Appellant failed to establish that Mr. Blasingame's physical injuries were a highly predictable consequence of the City's body camera training. Although Appellant presented present expert opinion testimony suggesting, generally, that proper body camera usage and training can reduce excessive force incidents, Appellant did not present data from APD (or any other police department) or conduct analytical research to link Mr. Blasingame's injuries to toggling errors in body camera usage.

Second, Appellant suggests that the district court's granting of Officer Grubbs' timely motion for remittitur was untimely because Appellant believes the district court's order on September 22, 2022 should be construed as a final judgment, despite this Court's determination that it was not a final judgment. Officer Grubbs' filed his motion for remittitur six days after the district court's May 2, 2024 entry of judgment, and so Appellant's argument fails.

Third, Appellant's claim for medical expenses under O.C.G.A. § 42-5-2 was never properly pled, and the district court properly denied

Appellant's request for relief from the judgment on that basis. Appellant's claim for medical expenses was raised for the first time at summary judgment and constituted an entirely new statutory basis for entitlement to relief. Accordingly, it was a new claim that should have been brought in an amended complaint. Appellant never amended his complaint to add this claim for medical expenses, so it is waived.

Finally, Appellant's request for specific amounts of attorneys' fees is not proper for this Court's review at this time. The district court did not award attorneys' fees to Appellant, but acknowledged that, while Appellant was the prevailing party at trial, it was premature to award attorneys' fees until the pending appeals were resolved. In so holding, the district court did not abuse its broad discretion to manage its docket, and Appellant does not assert that it did. Further, the amount of attorneys' fees that Appellant may be entitled to if he succeeds on one of the two pending appeals is a factual determination that the district court must make first before this Court can review it. There is simply nothing for this Court to review.

## ARGUMENT

### I.   The City was entitled to qualified immunity.

The district court correctly held that, as a matter of law, the City was not liable for Officer Grubbs' actions under *Monell* because Appellant did not show that the City failed to train its officers on use of body cameras or that its body camera policies caused any injury or alleged violation of Mr. Blasingame's Fourth Amendment rights.[4]

In *Monell*, the United States Supreme Court held that a municipality can be liable under 42 U.S.C. § 1983 for injuries inflicted by its employees. 436 U.S. at 694. To succeed on a *Monell* claim, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). To establish deliberate indifference, a "showing of simple or

---

[4] Appellees assert that there was no violation of Mr. Blasingame's Fourth Amendment rights, but because that issue has been thoroughly briefed in the related appeal, they adopt those arguments by reference instead of re-briefing them here. *See* Appellant's Br. at 16–33, *Edwards v. Grubbs*, No. 24-12787 (11th Cir. Dec. 11, 2024).

even heightened negligence is not enough." *McDowell*, 392 F.3d at 1291 (quotation omitted).

A policy is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while a custom is "a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotations omitted). "In limited circumstances, a local government's decision not to train employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *Connick*, 563 U.S. 51). But to establish § 1983 liability via failure to train, a plaintiff must show "a pattern of similar constitutional violations by untrained employees," or that "the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Connick*, 563 U.S. at 58, 63.

Appellant did not satisfy these elements through his evidence at trial and the district court correctly granted judgment as a matter of law. First, Appellant's evidence at trial did not show "deliberate indifference"

toward officers' body camera usage. The evidence at trial showed that the City trained APD officers on how to use body cameras, although there was some inconsistent testimony on how well officers understood the nuances of the camera's mechanics. Tr. 915:06–916:02; 964:21–965:08; 966:13–21; 157:08–15; 912:23–913:17. There was also usage rate evidence that officers were only using body cameras one third of the time required, but that evidence was mitigated with testimony about poorly constructed survey parameters and the learning curve of adjusting to new technology for the officers. Tr. 271:15–272:01; 293:12–296:18; 964:21–965:08; 966:13–21. Taken together, this does not amount to deliberate indifference or have anything to do with taser deployment. The City was widely implementing a new form of technology that was less than two years old, was studying compliance and seeking to improve usage rates, provided training on camera mechanics, and implemented written policies for camera usage.

Further, Appellant's evidence was insufficient as a matter of law to show an "obvious" need for the City to provide more or different training. This standard is extremely difficult to meet. The Supreme Court has only "hypothesized" that, "in a narrow range of circumstances," a plaintiff can

show an obvious need for training without showing a pattern of constitutional violations: if a municipality were to provide firearms to officers without training them on the use of deadly force. *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409–10 (1997) and citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Unlike in that hypothetical scenario, there was no such glaring omission in the City's body camera training. And further unlike that hypothetical scenario, cameras are not like guns and cannot be said to "cause" injuries in the same way. In short, the risk from the "possible imperfections, if any," in the City's training and supervision of its officers' body camera usage is "not obvious in the abstract." *Brown*, 520 U.S. at 410 (cleaned up).

Second, Appellant did not present evidence sufficient to prove that the City's body camera training caused Mr. Blasingame's physical injuries. To establish causation, Appellant needed to show that Mr. Blasingame's physical injuries were a "highly predictable consequence" of the City's body camera training. *McDowell*, 392 F.3d at 1292. Appellant failed to make that showing with his evidence at trial. Instead,

27

Appellant's evidence showed that the City trained its officers on body camera usage and that the City had studied the effectiveness of its trainings. It was not "highly predictable" that the City's alleged deficient toggling training would cause increased incidents of excessive force by APD officers or that it would cause Officer Grubbs to deploy a taser against Mr. Blasingame, or that doing so would lead to Mr. Blasingame's fall and injury from contact with the utility box. Appellant did present expert opinion testimony that, generally, proper body camera usage and training can reduce excessive force incidents but did not survey data or conduct analytical research to connect Mr. Blasingame's injuries to body camera usage by the City's officers generally or by Officer Grubbs in this specific situation.

The district court properly held that, even viewing the evidence in the light most favorable to Appellant, he did not present sufficient evidence to support a finding that the City's body camera policies caused Mr. Blasingame's injuries. Doc. 177 at 20–21. Specifically, the court held that Appellant's experts, although they gave "broad, conclusory opinions that proper use of [body cameras] can reduce uses of excessive force," did not specifically link that broader opinion to APD's body camera usage and

whether any failings increased uses of excessive force. *Id*. at 21. The district court concluded that there was a "fatal disconnect" between the City's body camera policies and the excessive force in this case. *Id*.

Appellant's arguments on appeal do not explain how he can overcome this "fatal disconnect." Appellant first asserts that the district court improperly required a history of constitutional violations by this holding, and that he was not required to make such a showing. Appellant's Br. at 29. This assertion misses the point. Appellant failed to connect his general evidence to increased excessive force incidents by APD officers or the specific incident at issue, as required to establish that that Mr. Blasingame's physical injuries were a "highly predictable consequence" of applicable body camera training by the City. *McDowell*, 392 F.3d at 1292.

Appellant next asserts that he could have proved his theory with a single constitutional violation and argues that the district court ignored that part of the jury instruction and legal analysis. Appellant's Br. at 29–30. While the law does allow Appellant to establish *Monell* liability as a result of failure to train in that way, Appellant still does not explain how he showed the extremely narrow circumstances that could establish

*Monell* liability through a single incident. He highlights no glaring omission from the City's body camera training that was obvious in the abstract. *Brown*, 520 U.S. at 410.[5] And even if there were such an omission, Appellant still fails to establish causation.

When Appellant finally does address causation, he merely asserts that he produced expert testimony on causation, Appellant's Br. at 33, and summarizes the testimony of his two expert witnesses. *Id*. at 33–34. He then asserts that the district court's legal finding that he did not prove causation was an improper finding on witness credibility. *Id*. Appellant does not explain what makes this district court's conclusion on causation an improper credibility determination as opposed to a legal conclusion, nor does he explain how his expert witnesses connected their general opinions to the specific incident at issue. As explained above, as a matter of law, he cannot do so, and this Court should affirm the district court. *Accord Knight v. Miami-Dade Cnty*., 856 F.3d 795, 813 (11th Cir. 2017)

---

[5] Appellant also takes issue with the district court's commentary that no published, binding authority from this Court or the Supreme Court has found a municipality liable under *Monell* based on a similar theory of failure to train on body camera usage. Appellant's Br. at 30–33; Doc. 177 at 21–22. Appellant relies on decisions by district courts in other circuits to argue that his theory of *Monell* liability should be upheld here. Appellant's Br. at 30–33. Appellant does not engage with the district court's comment that Appellant's out of circuit precedent did not remedy his failure to establish a causal relationship.

("[A] plaintiff cannot succeed [on a Fourth Amendment claim] by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.").

## II. The district court properly and timely remitted the punitive damages award against Officer Grubbs.

Officer Grubbs' timely filed his motion for remittitur. Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Judgment" is interpreted as "final judgment." *Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719 (11th Cir. 2020) ("Rule 59(e) begins to run upon the entry of a final judgment."); *cf. Crawford v. Andrew Sys.*, 119 F.3d 925, 927 (11th Cir. 1997) (per curiam) (clarifying that a Rule 59 motion filing period begins on a final judgment after the Court determined the first supposed judgment was void).

The district court entered final judgment on May 2, 2024. On February 15, 2024, the Eleventh Circuit denied both parties' appeals, finding that the district court had not granted final judgment because Count II was improperly dismissed under Rule 41. *Edwards v. Grubbs,* No. 22-13261, 2024 U.S. App. LEXIS 3526 at *2–3 (11th Cir. Feb. 15, 2024). Because there was no final judgment in the district court's

September 22, 2022 order and because Count II was still pending before the court, Appellant took action to close the case by moving to amend the complaint to dismiss Count II and requesting a final judgment. Doc. 256. The district court subsequently granted leave to amend and entered final judgment as to all counts on May 2, 2024. Doc. 260. The Second Amended Complaint was later docketed on May 10, 2024, containing one count for violations of 42 U.S.C. § 1983 against Officer Grubbs and the City of Atlanta. Doc. 261. The City timely filed its Rule 59(e) motion six days later, on May 16, 2024. Docs. 263, 263-1.

The May 2, 2024 order was the first and only original final judgment, despite Appellant's copious uncited recitals that the September 22, 2022 order was a "judgment." Appellant ignores that this Court remanded this case in February 2024, finding that no final adjudication of Count II of the First Amended Complaint had yet occurred. In an attempt to bypass this Court's determination, Appellant instead tries to reframe the May 2, 2024 Final Judgment as an "amended judgment." Appellant's Br. at 37–38.[6] Just as Appellant seeks to evade

---

[6] Appellant does not explain why an amended judgment would even be relevant. There is case law that suggests that a clerical change to a final judgment, like changing the caption of the case, does not reset the clock for Rule 59(e). *See* Wright

this Court's determination that the September 22, 2022 order was not a "final judgment," so too does Appellant ignore that an amended judgment necessarily requires an original final judgment. In fact, the district court eventually shows what an amended judgment looks like—it entered its *first* amended judgment on August 9, 2024. Docs.270, 271, 272. Perhaps for this reason Appellant foregoes citations to the underlying docket or to this Court's remand order. The only case Appellant cites, *Johnston v. Borders*, 2019 U.S. Dist. LEXIS 228218 (no pin cite), is wholly inapplicable because it included an "original" "final" judgment that was later amended. *Johnston*, 2019 U.S. Dist. LEXIS 228218, at *4–5. Appellant even bolded and emphasized language suggesting that the "original" judgment was a final judgment there. Appellant's Brief at 38. Here, there was never an original final judgment until May 2, 2024. Doc. 260; *see Edwards*, 2024 U.S. App. LEXIS 3526, at *2–3.

Appellant's timeliness arguments are flawed for several additional reasons. First, no matter how many times Appellant repeats that the September 22, 2022 order is a final judgment, this Court specifically held

---

and Miller: § 2812 Time for Motion, 11 Fed. Prac. & Proc. Civ. § 2812 (3d ed.) That is clearly not the case here, when there was never a final judgment until May 2, 2024.

that there was no final judgment. *Edwards*, 2024 U.S. App. LEXIS 3526, at *2–3 ("We do not have jurisdiction over this appeal [] because there is no final judgment."). Accordingly, any claim that the September 22, 2022 order was a final judgment is incorrect as a matter of law.

Second, after the Court issued its remand order, Appellant specifically moved the district court to enter final judgment in this case. Indeed, the header of Appellant's motion reads, "PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE HIS SECOND AMENDED COMPLAINT AND FOR ENTRY OF FINAL JUDGMENT." Doc. 256 at 1. Appellant cannot seek a final judgment, on one hand, and then claim that a final judgment had already been entered, on the other. The district court ultimately entered final judgment on May 2, 2024 and, therein, it amended Rule 59(e)'s 28-day deadline by imposing a 14-day deadline for post-judgment motions—a deadline for which Appellant does not make any timeliness accusations. Therefore, Officer Grubbs' Rule 59 motions are timely as a matter of law.

## III.  Appellant failed to plead a claim for damages pursuant to O.C.G.A. § 42-5-2.

The district court correctly denied Appellant's motion for relief from the judgment under O.C.G.A. § 42-5-2 for failure to sufficiently plead it

34

as a separate claim for relief. Although Federal Rule of Civil Procedure 8(a) provides a liberal pleading standard, that standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam). Further, "a defendant is not required to infer all possible claims that could arise out of the facts set forth in the complaint." *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1194 (11th Cir. 2021). Allegations raise a new claim when they create a different theory of relief—here, an "additional, separate statutory basis for entitlement[.]" *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006). Thus, while a plaintiff may raise new facts to support an already pled claim at summary judgment, he cannot raise "an additional, separate statutory basis" for relief. *Id.*

Appellant's request for medical expenses under O.C.G.A. § 42-5-2 is a separate claim for relief under a new statutory basis, and yet was not raised in his original or amended complaints. This new claim based on O.C.G.A. § 42-5-2, is separate from Appellant's other claims, which sought relief under the federal Constitution and 42 U.S.C. § 1983. *See* Doc. 1 ¶¶ 26–34; Doc. 52 ¶¶ 29–47; Doc. 261 ¶¶ 29–38. Appellant did

raise this claim at the summary-judgment stage, *see* Doc. 75, and the City pointed out his failure to plead it in the amended complaint. *See* Doc. 78 at 3–5. Raising a new claim at summary judgment is not the proper way to bring a new claim into an action. *Gilmour*, 382 F.3d at 1314. As Appellant did not properly bring his § 42-5-2 claim into this suit below, it is waived.

The district court correctly recognized Appellant's failure to properly plead a claim under O.C.G.A. § 42-5-2 and denied his Rule 60(b) motion for that reason. Doc. 219 at 13–14. Appellant offers no response to the district court's waiver analysis, but merely reiterates his arguments from below that Mr. Blasingame meets the criteria for relief under § 42-5-2. Appellant's Br. at 48–50. Accordingly, he has failed to plead a claim under § 42-5-2 and the district court's denial of his rule 60(b) motion based on § 42-5-2 should be affirmed.[7]

---

[7] Alternatively, if this Court finds that Appellant has somehow properly pled his claim under O.C.G.A. § 42-5-2, the claim still fails because Appellant has not shown any waiver of sovereign immunity by the City. Absent an express, statutory waiver by the General Assembly, sovereign immunity protects municipalities from tort claims. *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (2011). A party seeking to overcome the sovereign-immunity hurdle has the burden to demonstrate a waiver. *Ga. Dep't of Labor v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (2016). There is no statutory waiver for cost-of-care claims brought under § 42-5-2. *See Mitcham*, 296 Ga. at 576 (Under Georgia law, "the care of inmates in the custody of a municipal corporation is a governmental function for which sovereign immunity has not been waived[.]"). Appellant did not brief sovereign immunity below, and he does not do so

## IV. Appellant's attorneys' fees arguments are not properly before this Court.

Appellant's request for specific amounts of attorneys' fees is not proper for this Court's review at this time. The district court did not award attorneys' fees to Appellant, but acknowledged that, while Appellant was the prevailing party at trial, it was premature to award attorneys' fees until the pending appeals were resolved. Doc. 219 at 6. On appeal, Appellant does not argue that the district court abused its discretion by delaying a ruling on attorneys' fees, but instead argues that he is entitled to the full amount of attorneys' fees he requested below. Appellant's Br. at 50–51.

The district court did not abuse its discretion in reserving any award of attorneys' fees until after resolution of both pending appeals arising out of this case. District courts have "unquestionable authority to control their own dockets" and "broad discretion in deciding how to best manage the cases before them." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (quotations and citations omitted); *see, e.g.,*

---

on appeal. *See* Docs. 75 at 4–8, 191 at 9–12; Appellant's Br. at 48–50. Accordingly, he has not satisfied his burden of showing a waiver of sovereign immunity. The district court alternatively denied Appellant's Rule 60(b) motion for this reason, and this Court should affirm if it finds that Appellant properly pled his claim.

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225–26 (2d Cir. 2004) (noting that the 1993 Advisory Committee notes to Rule 54(d) provides district courts with the option to rule on claims for fees, defer ruling on them, or deny the motion without prejudice until after the appeal is resolved and choosing to decide attorney's fees in a § 1988 case where plaintiffs' case was dismissed); *McGuire v. Strange*, No. 2:11-CV-1027-WKW, 2015 WL 13945331, at *1 (M.D. Al. Aug. 27, 2015); *Lamonica v. Safe Hurricane Shutters, Inc.*, No. 07-61295-CIV, 2011 WL 13173036, at *2 (S.D. Fla. Dec. 2, 2011). Here, the district court determined that, as Appellant may no longer be the prevailing party after resolution of the pending appeals, it could best manage the case by allowing Appellant to re-file his motion at a later date. Doc. 219 at 5–6. This decision was part of the court's inherent authority to manage its own docket and was not an abuse of discretion. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1320 (11th Cir. 2013) (explaining that court of appeals reviews a district court's decisions managing its own docket for an abuse of discretion and that where appellant did not challenge the district court's rationale for managing its docket, there was no abuse of the district court's "wide discretion"). *Contra Jackson v. Austin*, 267 F. Supp. 2d 1059, 1064 (D.

38

Kan. 2003). A prevailing party at trial is not immediately entitled to attorneys' fees under 42 U.S.C.S. § 1988 as of right. *See, e.g., Kirkeby v. Furness*, 905 F. Supp. 727, 728 (D.N.D. 1995). Because the district court did not rule on whether Plaintiff was a prevailing party below, there is simply nothing for this Court to review.

## CONCLUSION

For the above reasons, this Court should affirm the district court and should not rule on Appellant's attorneys' fees arguments.

Respectfully submitted this 10th day of February, 2025.

<table>
<tr><td>*s/ James E. Dearing, Jr.*</td><td>*s/ Harold D. Melton*</td></tr>
<tr><td>James E. Dearing, Jr.<br>JAMES E. DEARING, JR., P.C.<br>1596 W. Cleveland Ave.<br>Suite 102<br>East Point, Georgia 30334<br>(404) 870-0010<br>jdearing@jed-law.com</td><td>Harold D. Melton<br>Charles E. Peeler<br>Elizabeth P. Waldbeser<br>Alexander J. Hill<br>TROUTMAN PEPPER<br>LOCKE, LLP<br>600 Peachtree St. NE, Suite 3000<br>Atlanta, GA 30308<br>(404) 885-3000<br>harold.melton@troutman.com<br>charles.peeler@troutman.com<br>elizabeth.waldbeser@troutman.com<br>alex.hill@troutman.com<br><br>*Counsel for Appellees City of Atlanta and Officer J. Grubbs*</td></tr>
</table>

39

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,568 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

February 10, 2025

*s/ Harold D. Melton*
Harold D. Melton

*Counsel for Appellees City of Atlanta and Officer J. Grubbs*

40

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on February 10, 2025. I served all counsel of record by CM/ECF.

February 10, 2025                    s/ *Harold D. Melton*
                                     Harold D. Melton

                                     *Counsel for Appellees City of*
                                     *Atlanta and Officer J. Grubbs*